IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FAIZAL AWADAN,

    Plaintiff,                               No. 2:12-cv-2001 KJM KJN PS

    vs.

DAVISON DESIGN & DEVELOPMENT INC.,

    Defendant.                            <u>ORDER AND</u>
                                                <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

        The instant action, originally filed by plaintiff Faizal Awadan in San Joaquin County Superior Court, was removed to this court by defendant Davison Design & Development, Inc. on July 31, 2012, on grounds of diversity jurisdiction.  (Dkt. No. 1.)[1]  On August 6, 2012, defendant filed a motion to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), noticed for hearing on September 13, 2012.  (Dkt. No. 11.)  Plaintiff filed an opposition to the motion, and defendant filed a reply brief.  (Dkt. Nos. 14, 22.)  On August 15, 2012, plaintiff also filed a motion to remand the case to state court, which was not noticed for hearing.  (Dkt. No. 18.)  Defendant then filed an opposition to the motion to remand.  (Dkt. No. 20.)

---

[1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

Additionally, on September 7, 2012, plaintiff filed a motion to continue the September 13, 2012 hearing on defendant's motion to dismiss for 60 days. (Dkt. No. 24.)

At the September 13, 2012 hearing, plaintiff, who is proceeding without counsel, represented himself, and attorney James Wilkins appeared via telephone on behalf of defendant. The undersigned has fully considered the parties' briefs, the parties' oral arguments, and appropriate portions of the record.[2] For the reasons that follow, the court denies plaintiff's motion to continue the hearing on defendant's motion to dismiss. The undersigned also recommends that plaintiff's motion to remand be denied and that defendant's motion to dismiss the action for improper venue be granted.

BACKGROUND

The background facts are primarily taken from plaintiff's state court complaint attached to the notice of removal. (Dkt. No. 1.) Plaintiff, a resident of Stockton, California, invented a wireless stun gun named the "Faizer," which was designed to work like a Taizer, but without the use of wires and without limiting the user to a single shot. (Dkt. No. 1 at 5-6.) After obtaining a provisional patent, plaintiff submitted the idea to defendant, a Pittsburgh, Pennsylvania-based invention promotion firm, to develop a working prototype or product sample to be marketed to a third party business for manufacture and sale. (Dkt. No. 1 at 5-6, 9.) Defendant provided plaintiff with a cost estimate for developing the product sample, and the parties ultimately signed a written contract, the "New Product Sample Agreement" (a copy of which is attached to plaintiff's complaint), memorializing their agreement. (Dkt. No. 1 at 6, 42-50.) The contract contained a forum selection clause, which stated:

> This Agreement shall be governed by the law of the Commonwealth of Pennsylvania and is deemed to be executed, entered into and performed in Pittsburgh, Pennsylvania. For any dispute arising from this Agreement, the parties agree to seek to

---

[2] Although plaintiff's motion to remand was not noticed for a hearing in accordance with E.D. Cal. L.R. 230, the court nevertheless elects to address it in the interests of judicial economy and because the court has received adequate briefing from both parties.

>resolve the dispute or controversy through good faith negotiation. The sole jurisdiction for the submission of disputes not resolved through good faith negotiation is Allegheny County, Pennsylvania.

(Dkt. No. 1 at 50.)

Plaintiff alleges that after he made full payment under the contract, it became difficult to reach persons at defendant's business. (Dkt. No. 1 at 6.) According to plaintiff, when he eventually received a design from defendant, defendant's design (a baton with a stun gun at the tip of the baton) was not even remotely close to plaintiff's original design (a wireless stun gun). (Dkt. No. 1 at 7-8.) Plaintiff claims that he signed the contract with the understanding that the Faizer would be built primarily according to his original design, with a few minor changes to the design. (Dkt. No. 1 at 8.) Plaintiff further alleges that when he insisted that the product be built the way plaintiff designed it, defendant's president, Frank Vescio, informed plaintiff that they would have to re-quote the work. (Dkt. No. 1 at 7.) However, plaintiff was then later allegedly notified by defendant that it could not build the product per plaintiff's original design. (Id.)

Plaintiff contends that defendant intended to defraud him from the beginning and never intended to build the Faizer as designed. (Dkt. No. 1 at 8.) Plaintiff also claims that defendant deliberately and fraudulently withheld vital information as to the design of the Faizer, which would have made plaintiff look elsewhere for prototype development. (Id.) He alleges that as a result of defendant's "scam" and unfair business practices, his provisional patent has now expired, thereby purportedly leaving his design worthless. (Id.) Defendant disputes plaintiff's interpretation of the contract and his allegations concerning defendant's performance under the contract.

In plaintiff's complaint, he asserts various claims for fraud, misrepresentation and deceit, and deceptive business practices. (Dkt. No. 1 at 9.) Plaintiff seeks dissolution of the contract, actual damages of $12,000, damages for lost profits of $100 million, punitive damages of $100 million, interest, and court costs. (Dkt. No. 1 at 9-10.)

DISCUSSION

Before turning to defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), the court first addresses plaintiff's motion to remand the action to state court.

Plaintiff's Motion to Remand

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

In this case, the action was originally filed in the Superior Court for the County of San Joaquin, which falls within this federal district and division. (Dkt. No. 1 at 5.) As noted above, removal was premised on the court's original diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), which states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –(1) citizens of different States...." 28 U.S.C. § 1332(a)(1). (Dkt. No. 1 at 2.) The operative complaint alleges an amount in controversy exceeding $75,000, plaintiff is alleged to reside in California, and defendant is alleged to be based out of Pennsylvania. (Dkt. No. 1 at 5, 9-10.) As such, the notice of removal asserted that there was complete diversity of citizenship, that the amount in controversy requirement was satisfied, and that the action was otherwise removable under 28 U.S.C. § 1441(b)(2),[3] because defendant is not a citizen of California. (Dkt. No. 1 at 2.) Finally, the notice of removal asserted that removal was timely under 28 U.S.C. § 1446(b) and (c), because the action was originally filed in state court on July 3, 2012, defendant was served with process on or around July 12, 2012, and the notice of removal was filed within 30 days of such service on July 31, 2012. (Dkt. No. 1 at 2-3,

---

[3] 28 U.S.C. § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

4

5.)

Plaintiff's motion challenges removal of the action on three grounds.  First, plaintiff argues that defendant "maintains minimum [b]usiness in California and earns [i]ncome from the State of California" (such as the money received from plaintiff), and that defendant routinely solicits business in California.  (Dkt. No. 18 at 2.)  Liberally construed, plaintiff appears to claim that defendant should be deemed a citizen of California due to its business activities in California.  However, for purposes of diversity jurisdiction, a corporation is deemed to be a citizen of every state by which it has been incorporated and of the state where it has its principal place of business.  See 28 U.S.C. § 1332(c)(1); Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co., 117 F.3d 1128, 1134 (9th Cir. 1997).  Here, plaintiff does not dispute that defendant is incorporated in Pennsylvania and maintains its principal place of business in Pennsylvania.  To the contrary, plaintiff specifically alleged that defendant is "based out of Pittsburgh Pennsylvania."  (Dkt. No. 1 at 5.)  The mere fact that defendant conducts or solicits business in California does not make it a citizen of California for purposes of diversity jurisdiction.  Thus, it appears that the parties are diverse, and the action cannot be remanded on the basis of lack of complete diversity of citizenship.

Second, plaintiff claims that the action should be remanded, because San Joaquin County Superior Court has jurisdiction over the action.  (Dkt. No. 18 at 2.)  While it appears that this action could be brought in state court, the action could also properly be removed to federal court on the basis of diversity jurisdiction.  Thus, the mere fact that San Joaquin County Superior Court has overlapping or concurrent jurisdiction over the action is not a sufficient basis for remand.

Third, plaintiff requests remand on the basis of a medical condition related to his lumbar spine.  (Dkt. No. 18 at 2, 7-9.)  More specifically, plaintiff states "[m]y present physical condition does have an affect [sic] when traveling" and that "a short distance after traveling I will most likely require pain medication such as Norco."  (Dkt. No. 18 at 2.)  The District of

Columbia Circuit previously held that a district court lacks the power to remand a case for the convenience of counsel. Barksdale v. Wash. Metro. Area Transit Auth., 512 F.3d 712, 715-16 (D.C. Cir. 2008). The same rationale logically applies to a party proceeding without counsel. While the court has sympathy for plaintiff's medical condition, there is no authority permitting this court to remand a case to state court solely on the basis of a party's medical condition.

Therefore, the undersigned concludes that the action was properly removed to this court and that plaintiff's motion to remand should be denied.

<u>Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)</u>

Defendant moves to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) on the basis that the above-mentioned contractual forum selection clause provides that the sole jurisdiction for any disputes arising from the contract is Allegheny County, Pennsylvania. (Dkt. No. 1 at 50.)

Federal Rule of Civil Procedure 12(b)(3) governs a motion to dismiss based on enforcement of a forum selection clause. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Under Rule 12(b)(3), a court need not accept the pleadings as true and "may consider facts outside of the pleadings." Id.; Richards v. Lloyd's of London, 135 F.3d 1289, 1292 (9th Cir. 1998).

"Federal law governs the validity of a forum selection clause." Argueta, 87 F.3d at 324 (citing Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). The Ninth Circuit comprehensively outlined the principles applicable to the enforceability of forum selection clauses as follows:

> The enforceability of forum selection clauses in international agreements is controlled by the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[4] In *Bremen*, the Court first held that forum

---

[4] The Ninth Circuit has also held that Bremen is equally applicable to domestic forum selection clauses. "Although *The Bremen* involved an international forum selection question, and the Court emphasized the commercial realities of international trade, we see no reason why

selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. The Supreme Court has construed this exception narrowly. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, *Carnival Cruise Lines*, 499 U.S. at 591, 111 S. Ct. at 1526; *Bremen*, 407 U.S. at 12-13, 92 S. Ct. at 1914; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.* at 15, 92 S. Ct. at 1916. To establish the unreasonableness of a forum selection clause, [the challenging party has] the "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Pelleport*, 741 F.2d at 281 (citing *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917).

Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general. *See Spradlin*, 926 F.2d at 867 (applying *Bremen* to affirm enforcement of a forum selection clause in an employment contract); *Manetti-Farrow*, 858 F.2d at 512 (applying *Bremen* to affirm enforcement of a forum selection clause in an exclusive dealership contract); *Pelleport*, 741 F.2d at 280 (applying *Bremen* to affirm enforcement of forum selection clause in a domestic contract involving the exhibition of motion pictures).

Argueta, 87 F.3d at 324-25. Additionally, to be enforceable, the forum selection clause must use mandatory language clearly designating the chosen forum as the exclusive forum. N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1036-37 (9th Cir. 1995); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989).

In this case, it is clear that the forum selection clause contains mandatory language clearly designating Allegheny County, Pennsylvania as the exclusive forum. (See Dkt. No. 1 at 50 ["The *sole jurisdiction* for the submission of disputes not resolved through good faith negotiation is Allegheny County, Pennsylvania."] [emphasis added].) Furthermore, at least

---

the principles announced in *The Bremen* are not equally applicable to the domestic context. Courts addressing the issue uniformly apply *The Bremen* to cases involving domestic forum selection questions." Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 279 (9th Cir. 1984) (citations omitted).

facially, there is nothing apparently unjust or unreasonable about the forum selection clause. Given that defendant's principal place of business is in Allegheny County, Pennsylvania and that work pursuant to the contract was to be performed there, it is not unreasonable for the parties to have agreed to Allegheny County, Pennsylvania as the exclusive forum for litigation. Plaintiff does not argue that the forum selection clause was incorporated into the contract as a result of undue influence or "overweening bargaining power." Argueta, 87 F.3d at 325. Although plaintiff was an individual and defendant a corporation, there was nothing coercive about their relationship, and plaintiff freely entered into a business relationship with defendant, which plaintiff knew to be a Pennsylvania corporation based in Pittsburgh, Pennsylvania. (Dkt. No. 1 at 5.) Additionally, plaintiff does not claim that enforcement of the forum selection clause would contravene a strong public policy of California.[5]

In his opposition, plaintiff contends that the contract was obtained as a result of fraud, because defendant purportedly never intended to build the Faizer as designed by plaintiff, and deliberately withheld vital information from plaintiff that would have changed his mind about entering into the contract and making any payment. (Dkt. No. 14 at 2-3.) However, the pertinent question is not whether the contract was procured by fraud, but whether the forum selection clause itself was procured by fraud. See Argueta, 87 F.3d at 325 ("A forum selection clause is unreasonable if (1) *its incorporation into the contract was the result of fraud*....") (emphasis added); Stephan v. Goldinger, 325 F.3d 874, 879 (7th Cir. 2003) ("Even if [the contract as a whole] were procured by fraud, the venue provision would be valid by analogy to the arbitrability of disputes arising out of contracts procured by fraud when there is no argument that the arbitration provision itself was procured by fraud"); De David v. Alaron Trading Corp., 796 F. Supp. 2d 915, 927 (N.D. Ill. 2010) ("Although a basis of plaintiffs' factual allegations is

---

[5] Indeed, California law appears to allow enforcement of forum selection clauses under similar principles. See e.g. Cal-State Bus. Prods. & Servs., Inc. v. Ricoh, 12 Cal. App. 4th 1666, 1678-80 (1993) (referencing the United States Supreme Court's decision in Bremen).

that defendants misled them into investing, they nowhere argue that the forum-selection clause itself was fraudulently induced"); Mazzola v. Roomster Corp., 2010 WL 4916610, at *2 (C.D. Cal. Nov. 30, 2010) (not reported in official reporter) ("Plaintiff must prove that the forum selection clause itself - not the Agreement as a whole - is the product of fraud or overreaching").

Here, plaintiff has offered no facts or evidence suggesting that the forum selection clause *itself* was procured by fraud. To the contrary, at the hearing plaintiff conceded that the forum selection clause would apply to disputes involving defendant's performance under the contract (for example, according to plaintiff, if the product sample was the wrong color, did not operate properly, etc.). While plaintiff contends that the clause is inapplicable here because the product sample produced by defendant was entirely different from his design ("apples and oranges"), and that this suggests that defendant never intended to build the product as designed, that argument relates to the merits of the parties' dispute and would necessitate interpretation of the parties' contract as to the permissible extent of deviation of the product sample from plaintiff's design. Even if the product sample differed significantly from plaintiff's design, defendant still rendered some performance under the contract and did not simply abscond with plaintiff's money. It may be that a court could ultimately determine that the contract was void, that there was no meeting of the minds between the parties, and/or that the contract as a whole was procured by fraud. However, the court expresses no opinion regarding these issues or the merits of the dispute, and only notes that such determinations would have to be made by a court in the contractually agreed-upon forum. At bottom, plaintiff has not made a sufficient showing that the forum selection clause itself was procured by fraud.

Furthermore, although not an issue explicitly raised by the parties, plaintiff's tortious claims of fraud, misrepresentation and deceit, and deceptive business practices fall within the scope of the forum selection clause. Forum selection clauses "can be equally applicable to contractual and tort causes of action" and their application to tort claims "depends on whether resolution of the claims relates to interpretation of the contract." Manetti-Farrow,

Inc., 858 F.2d at 514.  As noted above, although plaintiff argues that defendant withheld information and never intended to build the Faizer as designed by plaintiff, the dispute is rooted in defendant's performance and the parties' relationship under the contract.  Each of plaintiff's claims relates in some way to the rights and duties in the contract, and the claims cannot be adjudicated without analyzing whether defendant was in compliance with the contract.  Indeed, plaintiff's complaint makes several references to his understanding and interpretation of the contract, which defendant disputes.  (Dkt. No. 1 at 8, ¶¶ 5-7.)  Thus, because the tort causes of action "relate to the central conflict over the interpretation of the contract, they are within the scope of the forum selection clause."  Manetti-Farrow, Inc., 858 F.2d at 514 (internal quotation omitted).

Additionally, plaintiff argues that enforcement of the forum selection clause would be unreasonable and unjust because it would deprive him of a meaningful day in court.  (Dkt. No. 14 at 3.)  In support, plaintiff states that he intends to present testimony of as many people as possible out of "the Two Hundred Forty Two (242) who have filed Complaints with the Better Business Bureau against Davison in the Last three (3) years along [sic]."  (Id.)  On that basis, plaintiff also moved for a 60-day continuance of the hearing on the motion to dismiss, in particular, to "obtain and authenticate names and addresses" of the witnesses he intends to present.  (Dkt. No. 24 at 2.)

Even assuming, *arguendo*, that such testimony would be admissible, that does not even remotely satisfy plaintiff's "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court."  Argueta, 87 F.3d at 325.  Plaintiff provided no evidence as to where these proposed witnesses are located and where they allegedly filed their complaints, although his motion to continue the hearing suggested that some witnesses are located in California.  (Dkt. No. 24 at 2.)  In any event, the mere inconvenience of having to bring potential witnesses to trial in Pennsylvania is insufficient to establish the requisite unreasonableness of the forum selection

clause, i.e. that it would deprive plaintiff of a meaningful day in court. Pelleport Investors, Inc., 741 F.2d at 281 ("The Supreme Court has distinguished the inconvenience necessary to establish unreasonableness of a forum selection clause and the balancing of convenience test appropriate in a change of venue or *forum non conveniens* motion"). Furthermore, because the general convenience of a Pennsylvania forum to plaintiff or plaintiff's proposed witnesses is a factor entitled to little, if any weight, in the analysis regarding enforcement of the forum selection clause, the court denies plaintiff's motion to continue the hearing. Simply put, obtaining and authenticating the names of potential witnesses has no bearing on enforcement of the forum selection clause.

Finally, the court notes that plaintiff has not raised his medical condition in the opposition to defendant's motion to dismiss. Nevertheless, the court has considered it and finds that it does not preclude enforcement of the forum selection clause here. Even if plaintiff's evidence of his medical condition is accepted and all reasonable inferences drawn in his favor, there is no evidence that plaintiff is completely incapacitated and unable to travel. The evidence submitted by plaintiff in the context of his motion to remand at best shows that he has a medical condition which may require pain medication when traveling. (Dkt. No. 18 at 2.) Again, while the court has sympathy for plaintiff's medical condition and recognizes that litigation in California would be more convenient for plaintiff, plaintiff has failed to meet his heavy burden of showing that he would effectively be denied a meaningful day in court in Pennsylvania.

Therefore, the court finds that the forum selection clause is mandatory, reasonable, and enforceable, and recommends that defendant's motion to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) be granted.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to remand (dkt. no. 18) be DENIED.

    2. Defendant's motion to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) (dkt. nos. 6, 11) be GRANTED.

    3. The action be DISMISSED WITHOUT PREJUDICE.

    4. The Clerk of Court be directed to close this case.

In light of the above-stated recommendations, IT IS ALSO HEREBY ORDERED that:

    1. Plaintiff's motion to continue the hearing on defendant's motion to dismiss (dkt. no. 24) is DENIED.

    2. The status (pre-trial scheduling) conference presently set for January 3, 2013 is VACATED.  If necessary, the court will reset the date of that scheduling conference.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

DATED: September 14, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE